of the United States Department of Labor. Maria Buxton is here for the petitioner, Ronnie, and Sarah Gordillo is here for the Department of Labor, and Rocio Garcia is here, um, for the, um, intervener. Office meeting. And you may begin, Ms. Buxton. Thank you, Judge Wilson, and may it please the Court. Maria Buxton on behalf of complainant and appellant Chris Ronnie. The Administrative Review Board, in this case, affirms summary decision against Mr. Ronnie on just one basis alone. It found that no reasonable person could possibly believe that Mr. Ronnie's reports could implicate shareholder fraud. That finding was incorrect and should be reversed for at least three reasons. First, the ALJ and the ARB employed the wrong standard for reasonableness after Sylvester. Second, the ALJ and the ARB both ignored key undisputed facts showing Mr. Ronnie's beliefs were indeed reasonable. And third, the ALJ and the ARB based their decisions on an inference drawn in Office Depot's favor from the fact that Office Depot demanded Mr. Ronnie investigate an issue related to the error he reported in violation of the summary decision standard. As for the first reason, the standard for showing the reasonableness of a whistleblower's belief is much lower than what the ALJ and the ARB employed. The ALJ and the ARB both tossed Mr. Ronnie's case out of court because they found there was insufficient evidence to support his reasonable belief as to one or two elements of shareholder fraud. Well, is it a subjective consideration or an objective standard that applies to determine whether or not to determine what reasonable belief means? It's both, Your Honor. The reasonable belief test involves both a subjective and an objective test. Subjectively, Mr. Ronnie will have to show that he did indeed have the belief that his reports implicated shareholder fraud, as well as objectively, a reasonable person with all the information available to Mr. Ronnie would have believed. We don't have a test in this circuit, though, so you're suggesting that we adopt the test that is cited in Sylvester v. Barexel, the Administrative Review Board's decision, that we adopt that standard as the 11th Circuit standard? Yes, Your Honor. Every circuit that has considered Sylvester has adopted it or at least cited to it favorably without deciding deference. Two circuits have expressly given Sylvester Chevron deference. Two circuits have given at least Skidmore deference without expressly objecting Chevron, and three have adopted it implicitly or explicitly without mention of deference. So the 11th Circuit should certainly adopt the ruling standard in Sylvester, and counsel for Office Depot and for the Department of Labor have effectively conceded that point. Can I ask you a question? How do we sort of square Sylvester reasonable belief in a violation with sort of individual elements? You mentioned elements earlier. Is it all the elements, the important ones, the obvious ones? Like, I mean, surely the elements must have some connection to whether one has a reasonable belief that there is a violation. Yes, Your Honor. The elements are relevant, but what Sylvester tells us is that the court should not employ an element-by-element test and that a lack of information going to a specific element should not remove the whistleblower's complaint from protection. I guess the reason I'm asking is that, like, I'm just trying to figure out why that is. I mean, a violation comprises elements, right? I mean, there is no violation without proof ultimately of, in this case, what, four, five, six different elements. And so how can it That goes to the Congress's intent behind Sarbanes-Oxley, which was to encourage all good faith reporting of fraud or potential fraud within a public company. So Sarbanes-Oxley was intended to encourage reports even if the employee had no legal training, so would have had no idea what the elements of shareholder fraud were. And even if it didn't require an employee to conduct an investigation, for example, before making a report in order to be protected from retaliation for making that report. So what Sylvester tells us is that a report about fraud, even in its earliest stages, is something that Congress intended to protect from retaliation. And that's why if we go through element-by-element, it effectively merges the requirements for approving, as your Honor stated, for approving a violation of shareholder fraud or another SEC rule or regulation with the requirements for finding a reasonable belief that a report reported a violation. But do you concede that conclusory statements are not enough? Conclusory statements would not be enough to prove reasonable belief if this were to go to a jury. However, Mr. Ronnie need not have information going to each element of shareholder fraud. So if he doesn't have information about intent one way or another, Sylvester and several of the circuits that have applied Sylvester tell us that his report should still be protected from retaliation. So even if he doesn't know whether or not Office Depot had the intent to commit fraud, if he pointed out a significant error in an important metric. But why is it a reasonable belief? Do you agree that the reasonable belief should be the objective standard? I know it's objective and subjective, but based on what the information and knowledge that the employee has themselves? Yes, the objective standard is based on the totality of the circumstances of the information that the whistleblower had. And your client here was an accountant and a financial expert? Yes, Mr. Ronnie was an accountant employed with Office Depot for less than a year. So is it reasonable to believe that fraud is being committed when your employer is asking you to find out why there's a discrepancy in the numbers? Yes, Your Honor. And the reason for that is is twofold. First, Mr. Ronnie knew that Office Depot acknowledged this was a material error and yet continued to use those false numbers and refused to fix the error. So the sales lift metric had been wrong for God knows how long. Office Depot, Mr. Ronnie's supervisors knew that those numbers were wrong. But didn't they ask him to find out why the numbers were wrong? Weren't they asking him to determine and to do a report as to why the numbers were wrong? I appreciate the question, Your Honor. And I'd like to clarify what exactly his supervisors asked him to investigate. What they asked him to investigate was why these two databases containing sales numbers were wrong. The error he reported was that Office Depot was employing an apples to oranges comparison of projections based on one set of sales data and actual sales based on another set of sales data. So the error really was that apples to oranges comparison and the fix. No one there's no evidence in the record that anyone disagreed with Mr. Ronnie's proposed fix, which was let's use only the numbers from this one data set that that would correct this apples to oranges issue. What his supervisors insisted that he investigate was why these two sets of sales data had different numbers, came up with different numbers, which really had no bearing necessarily on on how to fix the error itself and also was a Herculean task. There are so many reasons why sales numbers collected at different times might be different. And that's why Mr. Ronnie himself, he calls it an impossible task in his why he struggled with this task so much. And it raised the suspicion that this investigation wasn't indeed genuine. But either way, what the ARB and the ALJ did was infer. He mentioned his deposition. Didn't he say in his deposition that that the manipulation was not intentional? Your Honor, he said in his deposition that he was not saying that that they intentionally manipulated the data. What he actually says in his deposition is that he doesn't know either way whether they were intentionally manipulating speculation on his part then. And so the Administrative Review Board says that the whistleblower complaint was based on mere speculation rather than an objectively and subjectively reasonable belief that his employer was engaging in fraud. And if that's the case, then the Administrative Review Board's decision was based on substantial evidence and was not arbitrary and capricious. I disagree, Your Honor. I don't think that that quote is being interpreted the way it should be. What he says is that he doesn't know either way whether Office Depot was intentionally manipulating the sales lift numbers themselves, but that the fact that the two data sets were different and they were comparing them incorrectly opened the possibility that they could be intentionally manipulating those results. But what what Mr. Romney's real theory of shareholder fraud is, is that the Office Depot failed to disclose this error, not so much that Office Depot intentionally manipulated the numbers. So Office Depot knew that it was using an incorrect metric and had been for a while. The right first. So they asked him prove to us that the data has been manipulated and he was unable to do so. Your Honor, the record does not reflect that he was unable to do so. What the record reflects and drawing all reasonable inferences in Mr. Romney's favor was that he was prepared to report the results of that investigation into why those numbers were different. And he was fired before he was able to report the results of his investigation. That's that's an undisputed fact in the record that the ARB and the ALJ should have considered also and disputed that they extended the deadlines several times in order for him to do the report. Correct. I'm not sure, respectfully, Your Honor, if it's undisputed that they extended the deadlines. Office Depot waited three weeks after Mr. Romney provided this report to ask formally ask him to investigate this. So that's that's delay on Office Depot's part. And then they fired him within months of asking him to investigate this this task that he calls impossible. And there is no evidence that it was achievable. And then Office Depot has not provided any evidence to dispute the fact that, again, he was fired before he was able to the day on the meeting when he was scheduled to report the results of this investigation. He was fired before he could do so, which, considering that evidence and drawing all reasonable inferences in Mr. Romney's favor, as the ARB was required to do on summary decision, shows that that investigation was not genuine. I'm going to ask you a question about the standard because it seems like it might matter. Right. So the way you're characterizing it, not unreasonably because of the procedural posture within the ARB, is that because this was effectively summary judgment within the agency, they were required to draw reasonable inferences in his favor. So, for instance, the delay, there might be two inferences. One is they really wanted to get to the bottom of it. Two is they're stalling. Right. And you're saying I get the benefit of the stalling inference. Right. But in response to Judge Wilson's or tag tagging on to Judge Wilson's question, we've got precedent, which may be weirdly, but does say that that we apply a substantial evidence standard to this kind of this decision. That doesn't really seem to make sense to me if it's effectively summary judgment that's been entered against you. But sort of how do we make sense of the standards? I respectfully, Your Honor, I don't think that that's the correct standard. Substantial evidence would be applied if this had gone through a hearing at the ALJ stage and that the ALJ had made factual findings. But the ALJ and the ARB only made findings as a matter of law and findings as a matter of law get de novo review on appeal. Yeah, I mean, that makes all the sense in the world to me. My concern is that I think there's this case. It's a it's a per curiam case from the late 90s called Fields versus the United States Department of Labor, Labor ARB, which presents in this posture, which purports to apply a substantial evidence test. And I get the reason I ask is that if we're applying substantial evidence, I think you're going to lose. But if we're applying something like a summary judgment standard in which you get the benefit of all reasonable inferences, there might be pieces of this case that you win. Your Honor, Stone and Webster versus U.S. Department, U.S. Department of Labor, 684 F. 3rd, 1127 is an 11th Circuit case which says we conduct de novo review of the Secretary of Labor's legal conclusions. But we test the secretary's factual findings for substantial evidence. So, again, because this was a summary decision, there are only findings of law here and de novo review applies. All right. Thank you, Ms. Buxton. We'll hear from Ms. Gordillo of the Department of Labor. Can I ask you just a quick question before you get going and your time's not running yet. So but you probably do a lot of these cases. Can you help me out with the standard question that I have? Or is that like is it your intention that we apply a substantial evidence standard here even on this in this summary disposition posture? Or do you acknowledge instead that we give the benefit of the inferences to the other side? Good morning. So our our view is that we we the court is going to review de novo and and there is some case law that discusses that there are reasonable inferences that that can be made to the non-moving party. I'm not sure if that answers your question. Thank you. May it please the court, I'm Saira Gordillo representing the respondent, the U.S. Department of Labor. Also with me are counsel representing the intervener, Office Depot Inc. Today, we ask this court to affirm the administrative review board's decision below. The ARB and ALJ properly applied the standards set forth in Sylvester v. Material Fact regarding whether he had an objectively reasonable belief that the data discrepancy that he reported related to shareholder fraud. Because Ronnie failed to raise a genuine issue of material fact, the ARB properly affirmed ALJ's grant of summary decision. And this court should do the same for the following three reasons. First, the petitioner failed to present evidence that he had an objectively reasonable belief that Office Depot's conduct violated one of the six enumerated provisions of SOX. Second, the ARB and ALJ followed the Sylvester standard of reasonable belief when they considered the reasonableness of the employee's belief on the totality of circumstances known by the employee at the time of the complaint in light of his training and experience. And third, because petitioner failed to raise a genuine issue of material fact when he did not need the second component of objective reasonable belief, the matter was decided as a matter of law and as such, summary decision was proper. Is it your contention that that we really do have to go element by element and that the, you know, in order to constitute a violation, you've got to have a reasonable belief as to each of, say, five elements of security fraud? No, Your Honor. Our position is that there is no element by element requirement that the whistleblower must present. However, the elements are still must are still relevant. They're not irrelevant. Like in what way? I'm trying to figure out what the decision tree looks like, because I would guess sort of in the ether, a violation just comprises five elements, right? If this were like a trial on the merits of securities fraud, the prosecutor would have to stand up and show that there was a material misstatement that induced reliance that caused harm. So how do we you say the elements are relevant, but sort of not decisive? What does that mean? Yes, Your Honor. So so the standard here is we're at the summary decision stage. And at this stage, the whistleblower must present sufficient evidence where a fact finder can can rule in, can decide in favor of of the non-moving party. So in this situation, he doesn't have to prove every element that would be at the trial level. So at this level, you're simply just looking at the the the whistleblower has the burden to provide this evidence and and the evidence, as as the case law does indicate, it has to to relate. So even it doesn't even have to be they don't have to actually prove that there was a violation. It could even be a mistake that there was a violation. And I'm just right. Right. We agree about that. He has to show that there is reasonable belief of a violation. And I'm trying to figure out what reasonable belief of a violation means, if not reasonable belief that each of five elements. Right. Satisfied, right. Right. I don't know what else a violation is except for five elements. Does that make sense? What exactly is it? Is it like just like a factor test or you just. Is it sort of a scale? And so like if you hit this pebble and you hit this pebble, it's enough. That's a reasonable belief, objective and subjective. Or, you know, if we have to write an opinion, tell us what we would say. Thank you for that question. So we do recognize that the standard is very flexible and that it is not limitless. And so when we look at the case law where they're discussing what what a whistleblower needs to provide in order to show that there was objective, reasonable belief, they are the ALJ and ARB have the discretion to to consider what's on the record. And so what is considered on the record, they they then look at the elements and they can discuss them. No one element is dispositive. And and so while while intent is not required, intent is still an important an important element when when there is an allegation of of shareholder fraud. And and so in some of these cases we have where some of the other circuits, the other cases apply totality of the circumstances analysis. I'm sorry, can you repeat the question? Do some of the other circuits in conducting this this test apply a totality of the circumstances analysis with regard to the elements? Yes, your honor. So under the under Sylvester's standard, there is a mention of considering under the totality of circumstances the knowledge that the petitioner had at the time that he made the complaint here. However, at the time of the complaint, Ronnie did not have sufficient information on the record. What happens here is his belief is formed after he makes the complaint. And and that we know that a belief cannot be constructed retroactively. So, for example, petitioner's brief in page fifty nine says that the investigation was not necessary, that everyone agreed and that agreed on how to fix it. However, there is absolutely no citation to the record supporting that. Is it possible just before we leave this element discussion, and I'm so sorry if I'm wrapped around the axle about it, but is it possible that a reasonable belief standard might require a demonstration of reasonable belief as to the elements that an ordinary person might reasonably believe would be relevant to proving securities fraud? So like there are some elements that are more elemental than others from a reasonable belief standpoint, like, you know, maybe we don't expect every sort of Joe on the street to understand loss causation, but we do expect people to know that an intentional misstatement. Is the very core of what securities fraud is, so you can't show reasonable belief if you've got no reasonable belief, at least as to those two kind of like core things. Yes, your honor, that is correct. We agree with that, especially as we've mentioned that the record itself says that Petitioner and his deposition stated that he was not saying that Office Depot intentionally manipulated the data. And and so fraud itself has a legal significance and the hallmarks of fraud are misrepresentation or deceit. And here on its face, he does not have anything close to that. So other than his general general speculation. So can I ask you, so it seems to me that even though technically he doesn't have to hit each and every single element of the five elements of securities fraud, the ALJ still starts with an understanding of what legally securities fraud would be. And then he evaluates or she evaluates the totality of the circumstances of the evidence based on what the general elements are. That is correct, your honor. And we did provide a definition from the case Northrop, the definition of what shareholder fraud is. And so that is what the ALJ and ARB did in this case. They looked at that definition and looked at the evidence that Ronnie presented and concluded that he ultimately only provided evidence of his subjective belief, which can you can you tell me what would be. A claim that would survive a hypothetical. A whistleblower that came in and said, I believe that my employer is committing securities fraud, what would it look like? Uh, yes, your honor. There are a couple of cases in where summary judgment is affirmed, for example, where in the facts in those cases where the plaintiff was a salesperson and a shareholder. And in that case, they said that a $10 million was considered a minor fraud. And so here, Ronnie has this level of education. And so then he would be it would be unreasonable with his education to think that shareholder fraud occurred when he presented a discrepancy, which was also part of his job responsibility. Can I let me ask you one more question, maybe where I started about the standard. So say with respect to intentionality, if we think that at the very least to have a reasonable belief, you've got to show intention and intentional misstatement. The bit so Judge Lagoa, I think, was asking your adversary earlier about, you know, sort of digging in to figure out what the problem was. Right. And that that might, I guess, show a lack of intentionality. But given that summary judgment standard, I think what your adversary says is, look, I was entitled to the benefit of the other inference, which is this was a stalling technique, a pretextual stalling technique. Go find the root cause. Go find the needle in the haystack. This was a stalling technique which actually sort of boomerangs back around to show a presence of intentionality. Why under the summary judgment standard, wouldn't we give the other side the benefit of that inference? Thank you for that question. And actually that thank you for raising that, because in fact, the reasonable inferences should be made at the time of the complaint and not after the fact again. And so even with this stalling tactic, the theory of fraud by omission, this argument was presented at the appellate level. So with the record that was presented at the ALJ and ARB, this was not one of the arguments that was raised, Your Honor. Thank you, Ms. Gordillo. Yes, thank you. Ms. Garcia. You're on here on behalf of Office Depot. Correct. May it please the court. My name is Rocio Blanco-Garcia and I'm here with my colleague, Colby Ellis, on behalf of Office Depot. If I may, I would like to start by addressing the standard issue that there seems to be still perhaps an outstanding question on. And I will implore the court to follow Thibodeau. Thibodeau is the latest ARB decision to which we must give deference because we must give the ARB deference with respect to its interpretation of the laws it is tasked with administering. And in Thibodeau, which is a post-Sylvester decision, the court goes on, the court says, while an employee need not plead or prove each element of a securities general anti-retaliation statute, the requirements a complainant must satisfy to get protection cannot be diminished to such a degree that they are divorced from the statute's text. And so what we do is we use the totality of the circumstances test and in analyzing the totality of the circumstances, we look at whether there is evidence or not that goes to the elements. So while meeting each of the elements is not this positive, the absence of evidence as to any of the elements is part of the totality of the circumstances that the ALJ and the ARB were entitled to consider here. And applying that standard here, what we find is a record that does not even remotely support an inference that Crony held an objectively reasonable belief that his report concerning sales data discrepancies concerns shareholder fraud. Northrop Grumman informs that a whistleblower's report implicates shareholder fraud if it suggests that a company intentionally misrepresented or omitted certain facts to investors which are material and risk loss. Intentionality, materiality, and the risk of loss are all part of the analysis. They're not this positive. The data error was pretty serious though here and all the company did, all Office Depot did was just tell him, well, prove it. And with a serious data error of this nature, it seems like Office Depot would expend more resources to determine whether or not the data error was in fact taking place. Isn't that sort of odd that the company didn't take this more seriously? So thank you, Your Honor. I will actually suggest that Office Depot took it more seriously than in fact, Ronnie characterized this data error as nothing more than a marketing performance scorecard. And he went on to say, this is not a financial report. They didn't put anybody else on it other than Ronnie himself. There's no support in the record for that proposition. In fact, what their emails that have been attached in the record show is that Office Depot did take the initiative to connect with the IT people who were managing that data to ensure that the investigation was pursued. And Ronnie has spent significant time arguing, well, the day I was going to reveal the big reveal, I got fired. One, that is unsupported by the record. Two, we just heard Ronnie's counsel talk about how this was an impossible task for which there was no answer. The implication being he would not have revealed anything because he didn't have an answer. In fact, at his deposition, he was asked, well, what was the answer? And he said, there was no answer. So again, this argument that he gets fired on the day that he's going to do this big reveal is unsupported by the record. Does the record reflect whether or not the incorrect data sets are still being used by Office Depot? The record does not have any evidence to that effect. However, the record also does not support that incorrect data sets were being used. In fact, what the record shows is that there was a discrepancy between two data sets, that he was asked to research the issue, that he did not act as expeditiously as Office Depot intended him to. And the record also supports, and this is important because it cuts against this inference of objectively reasonable belief, that James Hoganson, one of the individuals Ronnie is accusing of wrongdoing, has specifically said, once we are all aligned, we will come up with a plan of communication for our stakeholders. That is important because the case law tells us that an objectively reasonable belief may be refuted by open efforts to investigate. And here, that's what the record supports. Email after email, Office Depot saying, where are we on this? Office Depot saying, we all need to be aligned. We need to come up with a plan of communication. Everything else that we have heard from Mr. Ronnie is speculation and conjecture, and the speculation under this court's precedent is not sufficient to defeat summary judgment. Therefore, Your Honor, we respectfully request that the ARB's order affirming the ALJ's entry of summary decision be allowed to ascend. Thank you. Thank you, Ms. Garcia. And Ms. Buxton, you've reserved some time for rebuttal. Thank you. Ms. Buxton, once we apply this objective, this combination of the subjective standard and the objective standard, the bottom line for us is whether or not this decision of the Administrative Review Board was arbitrary and capricious. That's our standard of review, right? Yes, Your Honor. I think that translates to a de novo review of legal conclusions, arbitrary and capricious, or otherwise not in accordance. We cannot reweigh the evidence. Yes, that's correct. But I think Your Honor can note where incorrect inferences were made. So can I ask you on that question? This is important to me. It may be important only to me. Can you respond to your adversary's argument that this contention that the agency more generally drew the wrong inference from the go find the root cause statement, that your contention, I think, is that you were entitled to the benefit of an inference or the adverse inference, that is, that was a fool's errand, go find a needle in a haystack, it was stalling, pretextual, show's intent. They say, yeah, you never raised that sort of at the trial, so to speak, or at the trial level of the agency only on appeal in the agency. Yes, Your Honor. Mr. Arani, so Office Depot has argued that Mr. Arani waived this argument regarding the stalling tactic. That's incorrect. Office Depot is ignoring the fact that Mr. Arani was pro se all the way up until this latest round of briefing at the Court of Appeals. And so the court is required to construe his pleadings liberally, as the court knows. And Mr. Arani made this argument about the pretextuality of that investigation in his pre-hearing statement to the ALJ, that's at AR 463, in his amended position statement to the ALJ at AR 61, again in his opening brief to the ARB at AR 886. At each of those instances, he says, I was fired at the start of a meeting I scheduled to prevent me from disclosing the results of my investigation, essentially. So he made it very clear to the ALJ and to the ARB that Office Depot did not care about the results of this investigation and that there should have been an inference drawn that this investigation wasn't genuine. But I think what's important is that regardless of whether the court buys that inference or thinks one is more reasonable than the other, the fact is that if reasonable minds could differ on what this evidence means, Mr. Arani should have the benefit. And if there was no evidence as to his intent, so if this either way, Mr. Arani's report should still have been protected. He did not need to provide evidence of intent in order to get over this minimal threshold requirement of protected activity. And Sylvester tells us that. And as Wiest v. Lynch, which is a Third Circuit case, tells us, it would frustrate the purpose to require an employee who knows that a violation is imminent to wait for the actual violation to occur when an earlier report possibly could have prevented it. In that sense, Mr. Arani could be reporting, if we don't fix this error, we'll be committing shareholder fraud. And I think Sarbanes-Oxley and Congress intended to protect just that kind of report to prevent the shareholder fraud from happening. Your Honor, Judge Newsome, you asked about what the decision tree should be for the court. And that's a really important question, so I'd like to address it. First, I think the court should have considered what are the facts that were known to Mr. Arani at the time, which the Airbnb and ALJ did not consider. There's no mention of what it was he did know, only what evidence he lacked, and of this incorrect inference regarding the investigation. And then, taking those facts, the court should ask, was this not wholly untethered to shareholder fraud? Was this in some way to shareholder fraud or another SEC rule or regulation? And then, looking at that, keeping in mind... I just want to ask briefly, and I'll let you go on because I'm cutting you off, but is your not wholly disconnected or untethered from, is that sort of your paraphrase for reasonable belief of? I just want to make sure that I'm kind of like tracking textually what you're talking about. That's how you kind of operationalize the reasonable belief standard? In effect, yes, Your Honor. That's how Nielsen and Thibodeau have both interpreted Sylvester. That the report has to just approximate in some way, has to be not wholly untethered, excuse me, to shareholder fraud. And so, that's not an element-by-element approach. He doesn't have to show a violation, so he doesn't need to have evidence as to each element. He doesn't have to show evidence as to a reasonable belief to each element. Do you think there are some elements that he actually does have to kind of box check? I mean, like, would he have to show, at the very least, a misstatement? Like, could you have a reasonable belief of securities fraud without a reasonable belief of a misstatement? Your Honor, again, I think it's a very case-specific standard, but I want to try and answer your question. I think a whistleblower needs to have a reasonable belief that some kind of fraud is imminent here, that this kind of smells of fraud, essentially, because the whistleblower need not have, again, any legal training, and your average employee is not going to know the elements of shareholder fraud. So, the fact that Mr. Ronnick, for example, knew, you know, this is a really important metric that we use, and it's in our 10-K that we mention this, and I've heard the CEO has mentioned the I think that that's enough to show that this report was at least tethered to shareholder fraud and should have been protected from retaliation. All right. Thank you, counsel. Thank you. Thank you.